**\*\* NOT FOR PUBLICATION \*\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————————————

| | | |
|---|---|---|
| | : | |
| RUBEN FELICIANO, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 11-2239 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHAEL J. ASTRUE, COMMISSIONER | : | |
| OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

———————————————————————————

**WOLFSON, United States District Judge:**

Ruben Feliciano ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("Defendant"), denying Plaintiff Disability Insurance and Supplemental Security Insurance Benefits under the Social Security Act, 42 U.S.C.A. § 402. This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). On appeal, Plaintiff contends that (1) the Administrative Law Judge ("ALJ") committed error at Step Two of the sequential analysis by not finding Plaintiff's impairments to be severe; and (2) the ALJ failed to properly evaluate Plaintiff's subjective and objective assertions of pain. After reviewing the administrative record, this Court finds that remand is required for the ALJ to more fully explain his Step Two determination.

**I.    OVERVIEW**

    A.    *Procedural History*

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income on January 24, 2007, alleging disability starting January 1, 2007 due to hypertension and peptic ulcer disease. Administrative Transcript ("Tr." or "AR") at 10, 12. Both claims were denied initially and upon reconsideration. *Id*. at 10. A hearing was held on October 22, 2009 before an ALJ. *Id*.  On May 25, 2010, the ALJ issued a decision finding that Plaintiff was not disabled. *Id*. at 13. The Appeals Council denied Plaintiff's request for review on February 18, 2011. *Id*. at 1. Thereafter, on March 5, 2012, Plaintiff filed the instant appeal.

B.    *Background*

Plaintiff was born on May 27, 1959. *Id*. at 90. Plaintiff has a 10th grade education and communicates in English. *Id*. at 20. Prior to January 1, 2007, Plaintiff worked primarily in construction as a forklift operator and in building maintenance as an apartment complex superintendent. *Id*. Plaintiff stopped working at "[t]he end of '06" because he was "in constant pain." *Id*. at 23-24.  He has since been out of work.

C.    *Plaintiff's Impairments*

On January 13, 2007, Plaintiff was admitted to Robert Wood Johnson University Hospital, complaining of "two days of abdominal pain." *Id*. at 149. The emergency department physician, listed as "Hong," noted that Plaintiff described his abdominal pain as "intense, indescribable, radiaitng [sic] from RLQ to epigastrum since last night" and reported vomiting. *Id*. at 168. In the emergency room CT scan of Plaintiff's abdomen, Dr. Hong noted CA++ granulomas and emphysema. *Id*. at 171. He ordered that Plaintiff should have a follow-up to get a non-emergent CT scan of his chest. *Id*. The examining physician, Meredith Tinti, MD, found Plaintiff suffered from increasing abdominal pain

both subjectively and objectively, which "was suspicious for perforated gastric/duodenal ulcer." *Id*. at 155. Therefore, she diagnosed him with a "[p]erforated duodenal ulcer" and performed an "[e]xploratory lamrotomy" to "repair[] the duodenum" on January 14. *Id*. The postoperative diagnosis was consistent with the preoperative diagnosis as a perforated duodenal ulcer. *Id*. After his surgery, he had a "normal post-operative course with no complications" and reported "feeling much better." *Id*. at 164, 217. However, he complained of shortness of breath with climbing stairs and was therefore referred to a primary care doctor to manage his peptic ulcer disease and shortness of breath. *Id*. at 217, 235. Plaintiff called Dr. Tinti back because the primary care doctor only accepted patients with benefits, so she referred him to the Eric B. Chandler Health Center ("Chandler Health Center"). *Id*. at 235. Dr. Tinti advised Plaintiff that he should not do any heavy lifting for 6 weeks, but could return to work on February 26. *Id*. at 237.

On February 12, 2007, Dr. Gupta saw Plaintiff for a follow-up examination at the Chandler Health Center. *Id*. at 229-234. Plaintiff complained of soreness in the area of the surgical scar and shortness of breath after climbing two flights of stairs. *Id*. at 229. Dr. Gupta concluded that Plaintiff had peptic ulcer disease, hypertension, and possibly dyspnea on exertion; he would order an echocardiogram and once Plaintiff's pain subsided, he would order pulmonary function tests to determines if the cause was chronic obstructive pulmonary disease ("COPD"), pulmonary embolism or coronary artery disease. *Id*. at 232. He noted that Plaintiff was to continue on Prilosec and "start [beta] blockers." *Id*. He then ordered a follow-up appointment in one month. *Id*.

On March 19, 2007, at the follow-up appointment with Dr. Gupta, Plaintiff stated that he felt improved and Dr. Gupta reported that his abdomen was soft and not tender.

*Id.* at 227. Plaintiff reported that he had an echocardiogram sometime prior to his appointment.  Dr. Gupta prescribed 40 milligrams of Nexium for his peptic ulcer disease and 50 milligrams of Atenolol for his hypertension. *Id*. He then ordered a second follow-up appointment, this time in six months. *Id*.

On May 18, 2007, Plaintiff again visited the Chandler Health Center, complaining of headache, dizziness, shortness of breath and fatigue, and was seen by Dr. Schneiderman.[1] *Id*. at 224. Plaintiff stated he had problems breathing, saw stars when he got up, was not sleeping well, and was tired. *Id*. Plaintiff also reported being told he had emphysema in the past. *Id*. Dr. Schneiderman prescribed the same doses of Atenolol and Nexium, as well as 300 milligrams of Gabapentin.

On June 7, 2007, Plaintiff had outpatient pulmonary functioning tests performed at Robert Wood Johnson University Hospital by Dr. Schneiderman.  Dr. Schneiderman recorded that "[l]ung volumes show a normal TLC and VC  Spirometry reveals a normal FVC with a reduced FEV1 and a normal FEV1/FVC ration  The DSB is reduced." *Id*. at 223. Dr. Schneiderman's impression is stated as "isolated reduction in diffusing capacity." *Id*.

On August 31, 2007, Dr. Schneiderman saw Plaintiff[2] at Chandler Health Center. *Id*. at 220. He noted that Plaintiff's stomach was "ok," but that Plaintiff still had dyspnea

---

[1] Plaintiff asserts in his brief that he "was again seen by Dr. Gupta on May 18, 2007..." Pl.'s Br. ¶¶ 7. However, Plaintiff is mistaken as to which doctor attended to him. The "Progress Notes" document, Tr. 224, clearly states that the doctor lists his or her name as "Schneiderman." This doctor also analyzed Plaintiff's pulmonary functioning tests, and is listed as "J [sic] Schneiderman." Tr. 221.

[2] Plaintiff again asserts that the attending doctor in this instance was Dr. Gupta. Pl.'s Br. ¶¶ 8. The "Progress Notes" document, Tr. 220, clearly states that the attending doctor was Dr. Schneiderman.

on exertion when climbing stairs. *Id*. During this visit, Plaintiff exhibited no acute distress and Dr. Schneider described his abdomen as soft and benign. *Id*. Listed medications were the same brand and quantity as the May 18 visit. *Id*. On November 1, 2007, Plaintiff's applications for DBI and SSI were initially denied. *Id*. at 10.

On May 1, 2008, Dr. Francky Merlin, a State agency physician, examined Plaintiff. *Id*. at 241. Plaintiff reported that he had not taken Atenolol in 2 days and "does not take any medication" because of lack of health insurance and funding. *Id*. He also reported shortness of breath going up stairs. *Id*. Dr. Merlin noted Plaintiff's history of high blood pressure and COPD. He described Plaintiff's general condition as "[a] well developed and well nourished male, alert, conscious and oriented, in no acute distress." *Id*. at 242. He described Plaintiff's abdomen as "bowel sounds are normal, soft, tender in the epigastrium, no organomegaly, masses or bruits." *Id*. He described Plaintiff's lungs as "[n]o wheezing, rales or ronchi." *Id*. He then diagnosed Plaintiff with hypertension, which he listed as "controlled," COPD, peptic ulcer disease and venous insufficiency. *Id*. at 242-43. He recommended a follow-up with a pulmonologist and gastroenterologist for the COPD and peptic ulcer disease, respectively. *Id*. at 243. On May 29, 2008, Plaintiff's application for DBI and SSI were again denied upon reconsideration by the Department of Disability Services ("DDS") medical consultant, Geeta Parikh. *Id*. at 245. Parikh's review listed Plaintiff's allegations as peptic ulcer disease and hypertension, and found them to be non-severe. *Id*. at 244-45.

On August 23, 2009, Plaintiff was admitted to the emergency room at Robert Wood Johnson University Hospital complaining of right-sided abdominal pain for four days. *Id*. at 284. Dr. Jonathan McCoy, the attending doctor, reported that Plaintiff was

alert and in moderately to severe painful distress. *Id*. at 285. Dr. Shaikh and Dr. Needell performed a CT scan of Plaintiff's abdomen and pelvis. *Id*. at 280. The scan found that "[t]he visualized portions of the lungs...demonstrate a calcified granuloma...[and] [b]ullous disease and scarring is...noted...in both lung fields." *Id*. However, the kidneys, liver, gallbladder and adrenal glands demonstrated no abnormalities. *Id*. Furthermore, in the pelvis, the bowel and bladder were within normal limits. *Id*. Plaintiff was treated with nexium, pepcid, and dilaudid, and his symptoms improved within one to two hours. *Id*. at 290. Dr. McCoy stated that it was his opinion that Plaintiff had abdominal pain and colitis, but he did not "have a condition that require[d] surgical intervention or further testing..." *Id*. at 291. Plaintiff was then discharged from the emergency room. *Id*.

On November 30, 2009, Dr. Merlin, the state agency physician, again examined Plaintiff. *Id*. at 267. He referred to the August 23 emergency room visit as an episode from eight months ago that "lasted 20 minutes and was relieved by rest." *Id*. He found Plaintiff's general condition as well developed, and found Plaintiff well nourished, alert, conscious, oriented, and in no acute distress. *Id*. at 268. He listed Plaintiff's systems as "[r]emarkable for abdominal pain" and described his abdomen as "epigastric scar, bowel sounds normal, soft, non-tender, epigastric hernia, no mass, fluid shift or bruit." *Id* at 267-68. He described Plaintiff's lungs as "no wheezing, rales or ronchi." *Id*. at 268. He, again, diagnosed Plaintiff with COPD, as well as hypertension, and abdominal hernia. *Id*. at 269.

D.    *Testimonial Record*

Plaintiff appeared at a hearing before the ALJ on October 22, 2009. Tr. 16. Plaintiff testified he could not work because he was "in constant pain," he could not "sit

still but so long [sic]," he could not "go up a set of steps without stopping or holding onto anything," and he was hurt mentally. *Id*. at 23. In addition, he felt as though he "had like a baseball right here in [his] stomach that it's in constant pain and constantly moving in [his] stomach." *Id*. He further stated that he tried to deal with the pain from his stomach, but when it got worse, he went to the emergency room because "that's all [he could] do and afford right now." *Id*. at 24.

Plaintiff testified that he could not perform a sitting job because he could only sit for a short period of time until pain in his lower stomach becomes "worse" and he "can't stay still for some reason." *Id*. at 28. He also stated that every time he "[ate] or put something in [his] mouth, within five, 10 minutes [he is] in the bathroom." *Id*. He acknowledged that this problem had been occurring as long as his other stomach problems. *Id*. He stated that he has trouble sleeping because of the pain, which also hurts him mentally because he disturbs his wife's sleep. *Id*. at 29. He testified that he now sits in a laying down position and cannot walk a block or upstairs without becoming short of breath. *Id*. at 29-30. He affirmed that this was due to his shortness of breath. *Id*. He stated that he had problems crouching and bending, explaining that his pain becomes worse in the stomach area when he bends over. *Id*. at 32-33. Plaintiff conveyed that he could no longer lift more than 20 pounds due to his pain, specifically his hernia, after previously being able to do heavy weightlifting. *Id*. at 23, 31.

Further testifying to his breathing troubles, Plaintiff stated that his breathing stops when he climbs stairs, he had an inhaler prescribed to him that he could not afford to purchase, and he becomes more congested when lying down. *Id*. at 34. He noted that these troubles happen "at least three to four days" per week to two weeks. *Id*. As to his

medications, Plaintiff stated that "all he [could] afford is Prilosec over the counter" and Atenolol, and that he was supposed to be taking Nexium for his blood pressure and acid reflux disease. *Id*. at 24-25.

E.      *The ALJ's Decision*

In his May 25, 2010 decision, the ALJ began by stating that he would apply the five-step process to determine Plaintiff's disability status from January 1, 2007 through the present date. *Id*. at 12. At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2007. *Id*. At Step Two, the ALJ determined that Plaintiff had several medically determinable impairments: hypertension, COPD, venous insufficiency, and peptic ulcer disease.  *Id*.  However, the ALJ found that none of these impairments significantly limited Plaintiff's ability to perform basic work-related activities for 12 consecutive months, and that therefore Plaintiff did not have a severe impairment or combination of impairments sufficient to declare him disabled. *Id*. at 13.

The ALJ first stated that Plaintiff had alleged disability due to peptic ulcer disease and hypertension through his non-attorney representatives who were retained through the hospital from the firm Chamberlin and Edmonds. *Id*. The ALJ noted that the firm filed the application while Plaintiff was in the hospital for an ulcer. *Id*. He then referenced Dr. Merlin's medical examinations in finding that Plaintiff also suffered from COPD and venous insufficiency. *Id*. He noted Plaintiff's surgery in January 2007 for a perforated peptic ulcer. *Id*. However, he stated that at the time of the examination, there were "no signs or symptoms of intestinal instruction, malnutrition or bleeding," that plaintiff complained of shortness of breath "but his lungs were clear," and that Dr. Merlin found

in his final consultative examination that Plaintiff "was unremarkable with no orthopedic problems..." *Id*. The ALJ then references Exhibit 12F, Tr. 271, in finding that "Dr. Merlin assessed the claimant's residual functional capacity for medium work with some environmental limitations." *Id*. The ALJ wrongly cited Exhibit 12F, Tr. 271, as Dr. Merlin assessing *this Plaintiff's* residual functional capacity for medium work. Exhibit 12F, Tr. 271, is the "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" of one "Celeste Fridgen." This Court does not know why this document was included in the Administrative Transcript, but concludes that it does not reference this Plaintiff. The ALJ was incorrect in his citation and conclusion about this document as it relates to this Plaintiff.

The ALJ stated that the records from Robert Wood Johnson University Hospital indicated that Plaintiff was treated for abdominal pain and found remnants of an "old inactive lung disorder." *Id*. As to the record from the hearing, the ALJ stated that Plaintiff's answer as to why he believed he was disabled was that he was short of breath and had shoulder pain, "[y]et his only medication was Prilosec over the counter." *Id*. Finally, the ALJ noted that Plaintiff was supposed to be taking "Atenolol for his hypertension and Nexium for his reflux disorder, but ha[d] no insurance and [could not] afford his medications." *Id*.

The ALJ next laid out the process by which he could find Plaintiff disabled; specifically at Step Two, the ALJ explained that he "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functions." *Id*. at 14. He must also determine the credibility of any statements made in the hearing that were not substantiated in the

record. *Id*. As to the disability's effect on job abilities, the ALJ listed "the abilities and aptitudes to do most jobs," which included: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; ...[c]apacities for seeing, hearing, and speaking; ...understanding, carrying out, and remembering simple instructions; ...[u]se of judgment; ...[r]esponding appropriately to supervision, co-workers, and usual work situations; and...dealing with changes in a routing work setting." *Id*. at 13-14.

The ALJ concluded that "the claimant [did] not have an impairment or combination of impairments that significantly limit[ed] his ability to perform basic work activities..." *Id*. at 14. He stated that he "ha[d] considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and Social Security Rulings ("SSRs" or "SSR") 96-4p and 96-7p." *Id*.  He further stated that he considered Plaintiff's opinion evidence in line with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. *Id*.

The ALJ reasoned that the medically determined impairments could have produced the alleged symptoms, however, in his view, Plaintiff's statements regarding their persistence, intensity, and limiting effects were not credible because they ran contrary to evidence in the record. *Id*. Specifically, the ALJ found "there [was] virtually no discussion of pain in any medical record," "the claimant indicated he [could] lift 50 pounds," and "[h]e help[ed] his wife around the house." *Id*. Further, Plaintiff had alleged that he could not drive due to physical impairment, but admitted he lost his license to a DUI conviction. *Id*. As to the opinion evidence, the ALJ stated that since the medical

consultants at the DDS state agency found Plaintiff did not have a severe impairment, upon reconsideration, he must follow their guidance. *Id*. Thus, the ALJ concluded that for the purposes of Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income filed on January 24, 2007, he was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. *Id*. at 15.

## II.   DISCUSSION

### A.   *Standard of Review*

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel,* 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews,* 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-

finder." *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler,* 807 F.2d 54, 58 (3d Cir.1986).

      B.    *Standard for Entitlement of Benefits*

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see Plummer,* 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. 42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert,* 482 U.S. 137, 146–47 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he/she is automatically denied

disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen,* 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen,* 482 U.S. at 146–7 n. 5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer,* 186 F.3d at 428. Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his/her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his/her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen,* 482 U.S. at 146–47 n. 5. If the specific impairment is not listed, the ALJ will consider in his/her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams,* 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he/she retains the residual functional capacity to perform his/her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen,* 482 U.S. at 141. If the claimant is able to perform his previous work, the claimant is determined to not be disabled. 20 C.F.R. § § 404.1520(e), 416.920(e); *Bowen,* 482 U.S. at 141–42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer,* 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his/her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen,* 482 U.S. at 146–47 n. 5; *Plummer,* 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

C.   *Plaintiff's Arguments*

In the instant matter, Plaintiff claims: (1) the ALJ committed error at Step Two of the sequential analysis by not finding Plaintiff's impairments to be severe; and (2) the ALJ failed to properly evaluate Plaintiff's shortness of breath as well as his subjective and objective assertions of pain.[3]  I address each argument in turn.

---

[3]   While these two impairments do not appear to have been advocated at the hearing, the ALJ must consider not only those impairments the claimant says he has but also those "about which [the ALJ] receive[s] evidence." 20 C.F.R. 404.1512(a) (2006).  Defendant does not argue that the ALJ was not required to consider Plaintiff's shortness of breath or subjective complaints of pain.

1.    *Plaintiff's Shortness of Breath*

Plaintiff argues that, at Step Two, the ALJ erred in not finding his pain and shortness of breath to be severe impairments that substantially limit his ability to perform work-related activities. Pl.'s Br. ¶¶ 22. This Court finds that the ALJ did not properly apply the Third Circuit *de minimis* standard in finding that Plaintiff's impairments were not severe. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

To be considered disabled at Step Two, a claimant must have an impairment "which significantly limits [his or her] physical or mental ability to do basic work activities..."[4] 20 C.F.R. 404.1520(c). At this stage, impairments are found "not severe" when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85–28 at 3.[5]   Furthermore, the severity requirement excludes those impairments "which could never prevent a person from working" *Id.* at 2. When an applicant puts forth multiple non-severe impairments, a determination of severity is made as to the combined effect of all impairments, regardless of whether any individual impairment, taken separately, would be considered severe. 20 C.F.R. § 404.1523.

---

[4]  Examples of "abilities and aptitudes necessary to do most jobs" include: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. 404.1521(b).

[5]  "Social Security Rulings constitute the SSA's interpretations of the statute it administers and of its own regulations." *Chavez v. Dep't of Health & Human Servs.,* 103 F.3d 849, 851 (9th Cir. 1996). "Social Security Rulings do not have the force of law." *Id.* Once published, however, they are considered binding on all components of the Administration. *Walton v. Halter,* 243 F.3d 703, 708 (3d Cir. 2001).

The Third Circuit has laid out the following analysis for a Step Two determination:

> "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have no more than a minimal effect on an individual's ability to work. Only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits at step two. If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. Reasonable doubts on severity are to be resolved in favor of the claimant."

*Newell*, 347 F.3d at 546 (citations omitted). "The burden placed on an applicant at step two is not an exacting one...an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea*, 370 F.3d at 360. Additionally, "because step two is rarely utilized as basis for denial of benefits...its invocation is certain to raise a judicial eyebrow."[6] *Id*. at 361.

In the instant matter, the ALJ did not properly consider relevant evidence in finding Plaintiff's impairments to be non-severe. As to his first impairment, shortness of

---

[6] SSR 85-28 provides in important part:

> "Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued."

Furthermore, while Step Two should be reviewed with close scrutiny, a reviewing court should not apply a more stringent standard of review in cases where the step is at issue. *McCrea*, 370 F.3d at 360. The adjudicator's denial at Step Two is to be upheld if the record shows substantial evidence corroborating the decision. *Id*. at 360-61.

breath, Plaintiff has pointed to subjective and objective evidence that the ALJ did not address in his written opinion.  In the emergency room report on January 13, 2007, Dr. Hong noted that he believed the CT scan showed Plaintiff had emphysema. *Id*. at 171. In the post-operation report by Dr. Tinti, she referred Plaintiff to a primary doctor for shortness of breath on January 31, 2007. *Id*. at 217, 235. On February 12, 2007, Plaintiff reported to Dr. Gupta that he was only able to climb two flights of stairs before becoming short of breath. *Id*. at 229. Dr. Gupta noted that he may have had a past history of emphysema, and listed under the heading "Impressions" that the Plaintiff had dyspnea on exertion, which could be COPD, pulmonary embolism or coronary artery disease. *Id*. at 229, 232. He again reported to Dr. Tinti on March 27, 2007 his shortness of breath. *Id*. at 218. On May 18, 2007, he reported to Dr. Schneiderman that he had problems breathing. *Id*. at 224. On June 7, 2007, a pulmonary function test listed the doctor's impression as Plaintiff's lungs having an "isolated reduction in diffusing capacity." *Id*. at 223. On August 31, Dr. Schneiderman again noted that Plaintiff had dyspnea on exertion while climbing stairs. Finally, on May 1, 2008, Dr. Merlin—the state consultant—noted that Plaintiff had shortness of breath while going up stairs and diagnosed him with chronic obstructive pulmonary disease for which he recommended a follow-up with a pulmonologist.

At the ALJ hearing on October 22, 2009, Plaintiff testified that he moves infrequently, that he cannot "walk a block" because he becomes out of breath and tired, and that he is afraid to go for walks because he becomes out of breath "halfway up the steps." *Id*. at 30. In the ALJ's opinion, he stated that Plaintiff has COPD as diagnosed by

Dr. Merlin, but contrasted Plaintiff's testimony about his shortness of breath with medical findings that "his lungs were clear." *Id*. at 13-14.

Thereafter, the ALJ noted inconsistencies in the record regarding Plaintiff's respiratory impairments. It is true that "[t]he ALJ's assessment of credibility is an essential function of the Judge." *Sullivan v. Astrue*, Civil Action No. 10–4999 (SDW)(MCA), 09-2985, 2010 WL 2802231, at *7 (D.N.J. 2010). However, if there are inconsistencies in the record, the ALJ can not merely *reference* the contradictory evidence in passing, but must "mention and analyze the contradictory evidence that tends to discredit the claimant." *Decelercq v. Comm'r of Soc. Sec*., No. 10-4999, 2011 WL 3502387, at *9 (D.N.J. 2011) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000)).

In his reasoning here, the ALJ relied in part on the fact that "plaintiff's lungs were clear," and that a physical examination in December 2009 was normal with "no orthopedic problems noted," in concluding that his shortness of breath was not be severe. AR at 13. But Plaintiff never complained about orthopedic problems—that is, problems with his physical structure that affected his walking—but, rather, complained about how his inability to breathe properly affected his walking and standing. Moreover, while the medical record states that Plaintiff's lungs were clear at certain office visits, the ALJ did not address whether or how this fact undercuts Plaintiff's claims that he suffers shortness of breath when walking and standing.

The ALJ then stated that "the claimant indicated that he can lift 50 pounds [and] [h]e helps his wife around the house." Defendant argues that these statements, as well as Plaintiff's statements that he took care of his pets, that he could walk one-eighth of a

mile, and that he went outside two to three times a day, all confirm the ALJ's conclusion regarding Plaintiff's respiratory impairment. However, the ALJ does not discuss the records of Dr. Schoen, a treating doctor, and Dr. Merlin, the state consulting doctor, who each noted that Plaintiff has trouble breathing when walking up stairs, and when otherwise exerted. *See* AR at 242-243, 246. Other records, discussed *supra*, confirm that Plaintiff was disagnosed with dyspnea on exertion, as well as COPD. As the ALJ acknowledged in his opinion, basic work activities for the purposes of Step Two include walking and standing. 20 C.F.R. 404.1521(b). And, since Third Circuit law provides that inconsistencies, factual doubts, or vagueness issues are to be resolved in favor of the plaintiff at Step Two, *see Newell*, 347 F.3d at 546, I find that the ALJ's analysis is lacking for failure to address the above-referenced medical evidence.

My conclusion is buttressed by the ALJ's reliance on a residual functional capacity report indicating that plaintiff was assessed for "medium work with some environmental limitations." AR at 13. The ALJ relied on this report in concluding that Plaintiff's shortness of breath must not be severe. *Id.* This assessment for medium work is irrelevant because the document in question did not analyze Plaintiff. As explained above, the document relied upon by the ALJ referenced a "Celeste Fridgen"—not Ruben Feliciano. This medical testimony was clearly utilized by the ALJ in finding Plaintiff's main impairment non-severe, *see id.*, although it should have been disregarded wholesale. While at least one court has suggested that reliance on a third-party's medical record may constitute a harmless error where the "[t]he ALJ's determination was supported by substantial evidence divorced from [the] discrepancy," *see Melle v. Barnhart*, 64 Fed.Appx. 848 (3d Cir. 2003), in light of the ALJ's failure to fully address the medical

record relevant to Plaintiff's shortness of breath, and considering the *de minimis* standard applicable to Step Two determination, *see Newell, supra* at 546, I find remand the more appropriate course of action in this case.  "A district court, after reviewing the decision of the Commissioner may under 42 U.S.C. § 405(g) affirm, modify, or reverse the Commissioner's decision with or without a remand to the Commissioner for a rehearing." *Newell*, 347 F.3d at 549.  And, the Third Circuit has chosen to remand where, like here, the ALJ denied a claim at Step Two without proceeding to the other steps, because the record was not fully developed.  *Bordes v. Commissioner of Social Sec.*, 235 Fed.Appx. 853, 866 (3d Cir. 2007).

2.     *The ALJ's Evaluation of Plaintiff's Pain*

As to Plaintiff's second alleged impairment—pain—the ALJ did not fully consider objective and subjective evidence that could warrant a label of 'severe' at Stage Two, particularly when combined with the evidence relating to Plaintiff's shortness of breath.  As noted, in my discussion of Plaintiff's shortness of breath, in analyzing a claimant's alleged symptoms, the ALJ must first look to medical evidence to determine whether the claimant has an impairment that could reasonably produce his or her symptoms. 20 C.F.R. 404.1529(b).  The ALJ then evaluates the symptoms' intensity and persistence to determine how they affect the ability to complete basic job tasks. 20 C.F.R. 404.1529(c)(1). The ALJ considers medical findings, statements from the claimant regarding the impairments and limitations, his or her treating source, and how the particular symptoms affect him or her. *Id*., 20 C.F.R. 404.1529(c)(3). A claimant's statements regarding the intensity and persistence of symptoms may not be rejected solely because the available evidence does not substantiate the claimant's statements. 20

20

C.F.R. 404.1529(c)(2). The ALJ may also take into account the claimant's daily activities, mitigating factors, and the effects of relief measures. 20 C.F.R. 404.1529(c)(3).

The ALJ must give considerable weight to a claimant's testimony of subjective pain when it is consistent with competent medical evidence. *See Schaudeck v. Comm'r Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981). These complaints are not to be ignored or disregarded, particularly where the claimant has made such complaints during a physician's examination. *Dorf v. Bowen*, 794 F.2d 896, 902 (3d Cir. 1986). However, the ALJ may consider inconsistencies, conflicts between claimant statements and the rest of the evidence, and how claimant's symptoms allegedly affect his or her basic work activities to the extent to which they can reasonably be accepted as consistent with medical evidence. 20 C.F.R. 404.1529(c)(4).

In the instant matter, the ALJ contrasted Plaintiff's claims of constant pain and inability to sit still with the fact that his only medication is Prilosec over-the-counter. Tr. 13. He then stated that Plaintiff was supposed to take Atenolol for his hypertension and Nexium for his reflux disorder, but lacks insurance and cannot afford the medications. *Id*. Next, he found "virtually no discussion of pain in any medical record" to account for Plaintiff's allegations of constant pain.  *Id*. at 14.  In addition, the ALJ reasoned that Plaintiff indicated he can lift 50 pounds, that he helps his wife around the house, and that he claimed to be unable to drive due to physical impairment but was really unable to drive due to a DUI conviction.  *Id*.  Thus, the ALJ concluded that, while the impairments may have reasonably produced the symptoms, Plaintiff's allegations as to their intensity,

persistence, and limiting effects were not credible and a finding of disability not warranted. *Id.*

It is true that the ALJ may make credibility determinations about a plaintiff's testimony, specifically with regard to pain and other subjective complaints. *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 765 (3d Cir. 2009) (citing *VanHorn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)).   However, rejection of subjective testimony must be based on substantial evidence in the record.  *VanHorn*, 717 F.2d at 873–74.  Furthermore, if the ALJ finds that Plaintiff's description of pain is not credible, the ALJ must make a negative credibility determination regarding the degree of subjective pain alleged.  *Id.* at 873.  In that respect, when reviewing a decision by an ALJ, this Court must defer to the ALJ's determinations on the credibility of the witnesses and on whether the claimant has satisfied the burden of proof.  *See Horodenski v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 183, 188–89 (3d Cir. 2007); *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001) (noting that where the ALJ has articulated reasons supporting a credibility determination, that determination will be entitled to "great deference").

In this case, it is not clear whether the ALJ fully considered Plaintiff's subjective complaints of pain and the medical reports relating to his complaints in deciding to disbelieve Plaintiff's testimony.  The ALJ found that that there was no discussion of the pain in the medical record, yet the medical record includes several doctors reports recounting Plaintiff's complaints of pain.   For example, in January 2007, Plaintiff underwent surgery for a perforated duodenal ulcer that inflicted pain in his abdomen area. *Id.* at 149-72.  In addition, Plaintiff reported soreness in his abdomen region to Dr. Gupta

in February 2007.  *Id.* at 229.  Again, in August 2009, Plaintiff was admitted to the emergency room for abdominal pain that had persisted for four days. *Id.* at 284.  Apart from the substantive value of these reports, their presence in the record demonstrates the inaccurate nature of the ALJ's conclusion that there is "virtually no discussion of pain in any medical record."  *Id.* at 14.

Moreover, the state agency consultant, Dr. Merlin, stated in his report in which he diagnosed Plaintiff with an abdominal hernia that Plaintiff was "[r]emarkable for abdominal pain." *Id.* at 267. Defendant argues that this comment should be disregarded because it was listed under the Review of Systems section of the report, which refers only to Plaintiff's own complaint of pain. Df.'s Br. ¶¶ 22. Even assuming that this meaning should be ascribed to the Review of Systems section, the Third Circuit has remanded a case to an ALJ for failure to address subjective complaints recorded in a claimant's medical record.  *See Bordes*, 235 Fed.Appx. at 865.  Thus, that Dr. Merlin's report may refer to a subjective complaint is not alone a sufficient basis for failing to address the report at all.

More to the point, my concern here is that the ALJ did not explicitly state reasons, supported by the record, for his wholesale rejection of Plaintiff's complaints of pain.  The only facts upon which the ALJ relied, that are supported by the record, are that the Plaintiff indicated in a functional capacity report that he could lift 50 pounds and that he helps his wife around the house.[7]  However, Plaintiff's exact statement was that he helped

---

[7]     The ALJ further notes that the claimant "doesn't drive not due to any physical impairment, but because he has no license, having lost his license to DUI."  The Court strains to see why this fact is relevant to the Step Two severity analysis.  At best, this statement could be read to suggest that Plaintiff has not demonstrated that his driving is affected by his pain, however, that he is legally prohibited from driving makes it

around the house usually once a week or as needed—not on a daily basis.  AR at 132.
And, that Plaintiff could lift 50 pounds does not mean that he does not experience pain
while standing, walking, or sitting.  Indeed, the severity regulation cited by the ALJ
directs him to consider *all* of these sorts of basic work activities, of which lifting is only
one.  *See* 20 C.F.R. § 404.1521(b)(1) (defining basic work activities as "[p]hyscial
functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying,
or handling …..").  Moreover, Plaintiff further stated in the functional capacity report that
he could not sleep for more than two hours at a time due to pain, *id.* at 131, and he made
this same complaint to Dr. Schneiderman in May of 2007.  This testimony could be
interpreted as either supporting or not supporting Plaintiff's subjective complaints of pain,
but "[w]ithout an examination of [these statements by] the ALJ, it is impossible to tell"
whether he did not credit these statements or whether he just ignored them.  *Bordes*, 235
Fed.Appx. at 864-65.  *See also Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

My conclusion that remand is warranted here is buttressed by the ALJ's own
suggestion that he would provide an additional discussion that is, surprisingly, noticeably
absent from the opinion.  The ALJ states near the conclusion of his opinion:  "the
claimant's statements concerning the intensity, persistence and limiting effects of [his]
symptoms are not credible to the extent they are inconsistent with finding [sic] that the
claimant has no severe impairment or combinations of impairments for the reasons
explained below."  AR at 14.  The only "reason" that follows is the ALJ's one-sentence
reference to the state medical consultant's conclusion that "claimant had not established a

---

impossible to draw a conclusion about the severity of his pain from his lack of driving.  It
is almost as if the ALJ is penalizing the Plaintiff for not having submitted evidence that
his ability to drive is affected by his pain levels.  I see no ground for placing that sort of
burden on the Plaintiff in this case.

severe impairment." *Id.* Then, the ALJ notes that he "must make the same conclusion." *Id.* There is no further discussion as to why Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible.

This limited, and apparently incomplete, analysis is simply not enough to provide the Court with an understanding of the ALJ's reasoning. "An adverse credibility determination must contain specific reasons for the finding and must be sufficiently specific to make clear the weight given to the claimant's statements and the reasons for that weight." *Coates v. Astrue*, No. 08–0569, 2009 WL 1514457, at *7 (W.D.Pa. May 29, 2009) (citing Social Security Ruling 96–7p). Moreover, "[i]f the medical evidence suggests a claimant 'has an impairment which is reasonably expected to produce some pain, [the ALJ] must consider all of the evidence relevant to the individual's allegations of pain, even if the alleged pain is more severe or persistent than would be expected.'" *Knox v. Comm'r of Soc. Sec.*, 2010 WL 517608, at *3 (quoting *Sykes v. Apfel*, 228 F.3d 259, 266 n. 9 (3d Cir. 2000)).

In short, "[t]he ALJ 'must explicitly weigh the evidence and explain a rejection of the evidence.'" *Id.* Indeed, the Third Circuit remanded a denial of benefits to the ALJ for further explanation where the ALJ stated generally that a claimant's testimony regarding the severity of her impairments did not "match up" to the medical records." *Sincavage v. Barnhart*, 171 Fed.Appx. 924, 927 (3d Cir. 2006). *Compare Garibay v. Comm'r of Soc. Sec.*, 336 Fed.Appx. 152, 157 (3d Cir. 2009) (affirming where the ALJ compared the claimant's complaints with specific medical records including a report from the claimant's treating physician that her pain was controlled by medication). Based on the ALJ's similarly circumscribed analysis here, remand is likewise warranted. *Accord Ianuzzi v.*

*Astrue*, 312 Fed.Appx. 487, 491 (3d Cir. 2009) (remanding where ALJ concluded that claimant's statements concerning intensity, persistence, and pace were not entirely credible but "fail[ed] to explain, however, what he found not credible and why.").

Finally, Defendant argues that remand is unnecessary because there is substantial evidence in the record to support the ALJ's disability determination.   In my view, although the ALJ may ultimately determine on remand that Plaintiff is not disabled, I am not obligated to search the record and complete the analysis that the ALJ is assigned to undertake in the first instance.   Moreover, Defendants cites to cases in which courts have affirmed an ALJ's decision where remand would not alter the outcome of the case.   Those cases, however, are distinguishable.

For example, Defendant cites to *Rutherford v. Barnhart*, where the Third Circuit declined to remand for failure to expressly consider a claimant's obesity throughout the disability determination.   399 F3d 546 (3d Cir. 2005.   In refusing to remand, the circuit reasoned that the ALJ correctly relied upon the conclusions of several doctors who had considered the claimant's obesity.   *Id.* at 553.   Here, in contrast, the only report cited by the ALJ is that of the state consultant, which the ALJ failed to acknowledge substantiates Plaintiff's pain.   Also problematic is that the ALJ's only comment about that report is that he "*must* make the same conclusion."   *Id.* at 14 (emphasis added).   This statement creates the impression that the ALJ did conduct a careful review of the consultant's report and incorporate that report into his own, independent decision.[8]   *Compare* 20 C.F.R.

---

[8]     The other cases cited by Defendant are likewise unhelpful.   In those cases, the ALJ sufficiently discussed evidence in his opinion such that the court could conclude that substantial evidence supported the ALJ's decision.   *See, e.g.,*, *Drayton v. Astrue*, Civ. No. 09–02886 (DMC), 2010 WL 2674448, *11 (D.N.J. Jun. 30, 2010) ("Here, the ALJ did not summarily conclude that R.W.'s impairments did not meet, medically equal, or

404.1527 (f)(2)(i) (2006) (stating that an ALJ is not bound by any findings made by state consultants) *with* 20 C.F.R. 404.1527 (f)(2)(ii) (2006) (stating that an ALJ must explain the weight accorded to a state consultant's report);.

In *Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004), the Third Circuit explained that, while an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis," the decision "read as a whole" must be capable of providing meaningful judicial review. *Id.* at 505. Here, without the ALJ having fully addressed the medical and testimonial record, the Court cannot conduct meaningful judicial review of the ALJ's Step Two findings.[9] *Accord Sincavage*, 171 Fed.Appx. at 925 (remanding where ALJ failed to discuss, in Step Two analysis, medical reports recognizing that claimant suffered from panic attacks and failed to assess the impact of

---

functionally equal the Listings. Rather, the ALJ relied upon medical evidence and the opinions of both examining and non-examining physicians in determining that R.W.'s asthma did not meet, medically equal, or functionally equal the Listings."); *Matullo v. Bowen*, 926 F.2d 240 (3d Cir. 1990) ("[O]bjective evaluations . . . concluded that appellant was capable of working. Any failure of the district court to elaborate upon a finding of its opinion is at most harmless error because the record overwhelmingly supports the Secretary's determination."). One of Defendant's unpublished district court citations concludes that remand is not warranted where the record clearly establishes that the Plaintiff cannot demonstrate severity. *See Weachock v. Astrue*, Civil Action No. 2:10–cv–00395 (WJM), 2011 WL 2036775, *2 (D.N.J. May 22, 2011) ("Before this Court reverses the ALJ for failing to consider conditions that may cause functional limitations, Plaintiff must proffer some objective medical evidence tending to establish that those conditions have, in fact, produced functional limitations. Because Plaintiff has failed to make any such showing it would appear that any error (if error there be) is harmless."). I do not find this approach useful here where the ALJ relied upon an erroneous belief that evidence of Plaintiff's pain was absent when, in fact, there was evidence in the record that the ALJ did not expressly acknowledge.

[9]     Moreover, to the extent that Defendant points to additional record evidence not considered by the ALJ, the Third Circuit has noted that "general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ." *Diaz v. Commissioner of Social Sec.*, 410 Fed.Appx. 430, 433 (3d Cir. 2010); *Jones v. Comm'r of Social Sec.*, Civil No. 11–748 (FLW), 2012 WL 628510 at *9 (D.N.J. Feb. 27, 2012).

those attacks on the claimant's ability to work).  This is particularly troublesome in light of the *de minimis* standard applicable at Step Two, and that the Third Circuit has rarely affirmed a Step Two dismissal.  *See Zaccaria v. Commissioner of Social Security*, 267 Fed.Appx. 159 (3d Cir. 2008) ("[B]ecause step two is to be rarely utilized as basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow.") (*quoting McCrea*, 370 F.3d at 360-61).   The instances in which the circuit has affirmed a Step Two dismissal are far and few between, and are based upon a decision that fully addressed the relevant evidence of record.  *See, e.g., Zaccaria, supra* at 161 (finding that this was one of the rare cases in which a Step Two dismissal was appropriate, the circuit noted that the ALJ addressed the evidence of record that called into question the veracity of the claimant's testimony and that the claimant did not challenge the other bases for the ALJ's decision); *Sanchez v. Barnhart*, 186 Fed.Appx. 187, 191 (3d Cir. 2006) ("[I]n determining Mrs. Sanchez was not entitled to disability benefits, the ALJ properly identified and summarized each doctor's report as well as all of Mrs. Sanchez's non-medical evidence.").

## III.    CONCLUSION

For the reasons set forth above, this matter is remanded this case to the ALJ for further proceedings consistent with this Opinion.

/s/ Freda L. Wolfson_____
Hon. Freda L. Wolfson, U.S.D.J.


Dated: July 20, 2012